Sheldon WHITEHOUSE, in his official capacity as United States Attorney for the District of Rhode Island, et al., Plaintiffs–Appellees,

v.

UNITED STATES DISTRICT COURT FOR the DISTRICT OF RHODE ISLAND, et al., Defendants–Appellants.

Sheldon WHITEHOUSE, in his official capacity as United States Attorney for the District of Rhode Island, et al., Plaintiffs–Appellees,

v.

SUPREME COURT OF RHODE ISLAND, Acting Chief Justice Joseph R. Weisberger, Florence K. Murray, Donald F. Shea, Victoria Lederberg and David D. Curtain, as Acting Chief Disciplinary Counsel, et al., Defendants–Appellants.

Sheldon WHITEHOUSE, in his official capacity as United States Attorney for the District of Rhode Island, et al., Plaintiffs–Appellants,

v.

UNITED STATES DISTRICT COURT FOR the DISTRICT OF RHODE ISLAND, et al., Defendants–Appellees.

Nos. 94–1776, 94–1777 and 94–1889.

United States Court of Appeals, First Circuit.

Heard Dec. 8, 1994.

Decided April 20, 1995.

Warren C. Nighswander, with whom Sulloway & Hollis, Concord, NH, was on brief, for appellants U.S. Dist. Court for Dist. of Rhode Island, et al.

John F. Dolan, with whom Elizabeth F. Sullivan and Rice Dolan & Kershaw, Providence, RI, were on brief, for appellants Supreme Court of Rhode Island, et al.

Lauren E. Jones and Jones Associates, Providence, RI, on brief, for American Civ. Liberties Union, Rhode Island Affiliate, Nat. Ass'n of Crim. Defense Attys. and Rhode Island Ass'n of Crim. Defense Attys., amici curiae.

S. Michael Levin, Mark W. Freel, Melissa D. Famiglietti and Edwards & Angell, Providence, RI, on brief, for Rhode Island Bar Ass'n, amicus curiae.

Margaret E. Curran, Asst. U.S. Atty., with whom Craig N. Moore, Asst. U.S. Atty., Providence, RI and Sara Criscitelli, U.S. Dept. of Justice, Washington, DC, were on brief, for appellees.

Before TORRUELLA, Chief Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

TORRUELLA, Chief Judge.

The main question for decision is whether a United States District Court has the power to adopt a local rule that requires federal prosecutors to obtain judicial approval before they serve a subpoena on an attorney to compel evidence concerning a client. The United States District Court for New Hampshire held that the federal district court in Rhode Island has the power to adopt such a rule with respect to trial subpoenas, but does not have the power to do so with respect to grand jury subpoenas. For the reasons stated herein, we conclude that the United States District Court for Rhode Island has

the power to adopt the local rule in question, both with respect to trial and grand jury subpoenas. We therefore affirm in part and reverse in part.

## BACKGROUND

To fully appreciate the important interests at stake in this case, it is necessary briefly to review some of the recent history leading to this lawsuit.

### I. Attorney–Subpoenas

Until recently, federal prosecutors rarely subpoenaed attorneys to compel testimony relating to their clients. This practice changed in the 1980s as the federal government stepped up its fight against organized crime and narcotics trafficking. Most significantly, Congress passed several new federal statutes which, in the eyes of federal prosecutors, make attorneys fertile ground for eliciting incriminating information about the targets of federal investigations and prosecutions.[1]

Because service of a subpoena on an attorney implicates the attorney-client relationship, and thus raises ethical issues for prosecutors, the United States Department of Justice issued guidelines for federal prosecutors seeking to subpoena an attorney. See Executive Office for the United States Attorneys, Department of Justice, United States Attorneys' Manual § 9–2.161(a) (1985).[2] In addition, the American Bar Association (the "ABA") adopted an amendment to its Model Rules of Professional Conduct creating an ethical prohibition against subpoenaing a lawyer/witness without a showing of need, an adversary hearing, and prior judicial approval. See Model Rules of Professional Conduct Rule 3.8(f), reprinted in 6 Laws. Man. on Prof. Conduct (ABA/BNA) 25, 26 (Feb. 28, 1990). The instances of federal prosecutors subpoenaing attorneys to compel evidence regarding their clients have, nevertheless, continued to increase.[3]

1. See generally Federal Prosecutorial Authority in a Changing Legal Environment: More Attention Required, H.R.Rep. No. 986, 101st Cong., 2d Sess. 31 (1990) (chronicling the increased use of attorney subpoenas); Roger C. Cramton, Lisa K. Udell, State Ethics Rules and Federal Prosecutors: The Controversies over the Anti–Contact and Subpoena Rules, 53 U.Pitt.L.Rev. 357, 362–69 (1992) (same).

New federal laws with implications for the attorney-client relationship include: the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 (1988); the Continuing Criminal Enterprise Act, 21 U.S.C. § 848 (1988) (evidence that legal representation was provided by a benefactor, for participation in a criminal enterprise, relevant to prove existence of criminal enterprise); the Comprehensive Forfeiture Act of 1984, Pub.L. No. 98–473, 98 Stat. 2040 (codified as amended at 18 U.S.C. §§ 1961–68 (1988) and 21 U.S.C. §§ 853, 881 (1988)) ("relation back" provision allowing government to seize assets intended for, or paid to, lawyer as legal fees); the Tax Reform Act of 1984, Pub.L. No. 98–369, 98 Stat. 494 (codified at 26 U.S.C. § 60501 (1988)) (attorneys required to report identities of clients who pay fees with cash payments in excess of $10,000); and Money Laundering Control Act of 1986, 100 Stat. 3207–18 (codified as amended at 18 U.S.C. §§ 1956–57 (1988)) (criminalizing certain monetary transactions involving knowing use of funds derived from an illicit source).

Prosecutors generally subpoena attorneys under these new laws to elicit evidence with respect to fee arrangements and client identity. See, e.g., In re Grand Jury Subpoena for Attorney Represent-

ing Criminal Defendant Reyes–Requena, 913 F.2d 1118 (5th Cir.1990) (benefactor payments), cert. denied, 499 U.S. 959, 111 S.Ct. 1581, 113 L.Ed.2d 646 (1991); In re Grand Jury Subpoenas (Anderson), 906 F.2d 1485 (10th Cir.1990) (same); In re Grand Jury Subpoena Served Upon Doe (Slotnick), 781 F.2d 238 (2d Cir.1986) (same), cert. denied sub nom. Roe v. United States, 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986).

2. The guidelines require federal prosecutors to obtain the approval of the Assistant Attorney General in charge of the Criminal Division prior to issuing a subpoena on counsel. Before approving a subpoena to an attorney, the Assistant Attorney General must find that the information is necessary for an investigation or prosecution, unavailable from other sources, not protected by privilege, that the subpoena is narrowly drawn, and that the need for the information outweighs any potential adverse effects on the attorney-client relationship. Id.

3. In the first year that the Department of Justice Guidelines were in effect, July 18, 1985 to July 31, 1986, the Department approved 411 attorney subpoenas, an average of 33 per month. In the period from March 1987 through October 1987, the Department rejected only ten requests for attorney subpoenas, slightly more than one per month. Max D. Stern & David Hoffman, Privileged Informers: The Attorney Subpoena Problem and a Proposal for Reform, U.Pa.L.Rev. 1783, 1818 n. 176 (1988) (citing Justice Department statistics). In addition, according to Department

## II. *The Present Litigation*

In January 1984, the Rhode Island Supreme Court established the Committee to Study the Rules of Professional Conduct (the "Rules Committee") to study and provide recommendations regarding whether Rhode Island should adopt the ABA's Model Rules of Professional Conduct. In February 1987, the Rules Committee published a list of proposed rules and solicited comment from all members of the Rhode Island Bar. The Rhode Island Supreme Court later held a public hearing and received additional comments on the proposed rules. On November 1, 1988, the Rhode Island Supreme Court adopted the proposed Rules of Professional Conduct as an amendment to Rhode Island Supreme Court Rule 47. Among the rules adopted was Rule 3.8(f), which provides:

> **Rule 3.8. Special Responsibilities of a Prosecutor.** The prosecutor in a criminal case shall:
>
> \* \* \* \* \* \*
>
> (f) not, without prior judicial approval, subpoena a lawyer for the purpose of compelling the lawyer to provide evidence concerning a person who is or was represented by the lawyer when such evidence was obtained as a result of the attorney-client relationship.

On April 20, 1989, the United States District Court for Rhode Island issued an order incorporating the Rhode Island Rules of Professional Conduct, including Rule 3.8(f), into its local rules (federal rule hereinafter referred to as "Local Rule 3.8(f)").[4]

On August 2, 1991, the United States Attorney for Rhode Island petitioned the Rhode Island Supreme Court requesting that the court amend the state rule to waive its application to federal prosecutors practicing before Rhode Island's federal courts. The state court invited briefs from the United States Attorney and interested members of the Rhode Island Bar and, after a hearing, denied the petition to amend. The United States Attorney then wrote to the United States District Court for Rhode Island requesting that it exempt federal prosecutors from Local Rule 3.8(f). When the district court denied that request, the United States Attorney petitioned this court for a writ of mandamus requiring the district court to exempt federal prosecutors from the local rule. We dismissed the petition, stating that "the proper method for mounting a facial challenge to the validity of [Local] Rule 3.8(f) . . . is through an action for declaratory and/or injunctive relief filed in the district court."

The United States Attorney, and two of his assistants (the "plaintiffs"), then commenced the instant action against the United States District Court for Rhode Island and its sitting judges (collectively, the "federal defendants"), the Rhode Island Supreme Court and its sitting justices, and Rhode Island's Chief Disciplinary Counsel (collectively, the

of Justice statistics, from October 1, 1987 through September 30, 1988, the Department received 363 requests from federal prosecutors to subpoena 523 attorneys, of which 278 subpoenas were for grand jury proceedings and 85 for trial. From October 1, 1988 through September 30, 1989, the Department received 410 requests from federal prosecutors to subpoena 649 attorneys, of which 321 subpoenas were for grand jury proceedings and 89 for trial. *Exercise of Federal Prosecutorial Authority in a Changing Legal Environment, 1990: Hearing Before the Subcomm. on Government Information, Justice and Agriculture, of the House Comm. on Government Operations,* 101st Cong., 2d Sess. 408 (1990) (Appendix 2), *cited in* Andrea F. McKenna, *A Prosecutor's Reconsideration of Rule 3.10,* 53 U.Pitt.L.Rev. 489, 491 n. 5 (1992). *See also United States v. Klubock,* 832 F.2d 649, 658 (1st Cir.1986) (noting that, in the District of Massachusetts alone, from 50 to 100 attorney subpoenas per year were served by federal prosecutors from 1983 to

1986), *vacated,* 832 F.2d 664 (1st Cir.1987) (en banc by an equally divided court).

**4.** Several states, in addition to Rhode Island, adopted variations of the ABA's Model Rule. *See, e.g.,* Mass.Sup.Jud.Ct. Rule 3:08, PF 15 (adopted by United States District Court for Massachusetts), Tenn.Ct.C.P.R. & DR 7–103(C); N.H.R.P.C. 4.5; Va.Sup.Ct.R. 3A:12(a) (adopted as procedural rather than ethical rule); and Pa. Rule of Prof.Conduct 3:10. New York, Illinois and the District of Columbia considered and rejected the rule. *See* 6 Laws.Man. on Prof.Conduct (ABA/BNA) 28, 29, 53, 55, 172, 175. Pennsylvania's rule, which pertained only to grand jury subpoenas, was struck down by the United States Court of Appeals for the Third Circuit as beyond the court's rule-making power. *Baylson v. Disciplinary Board of the Supreme Court of Pennsylvania,* 975 F.2d 102 (3d Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1578, 123 L.Ed.2d 147 (1993).

"state defendants"), seeking declaratory and injunctive relief to prevent the defendants from enforcing the state or federal versions of Rule 3.8(f) against federal prosecutors practicing in Rhode Island's federal courts.[5]

Upon cross motions for summary judgment, the district court struck down Local Rule 3.8(f) as applied to grand jury subpoenas but upheld the rule as applied to trial subpoenas. The district court 1) granted plaintiffs' motion for summary judgment in part, holding Local Rule 3.8(f) invalid as applied to grand jury subpoenas because it exceeds the federal district court's limited rule-making power; 2) held that the state version of Rule 3.8(f) cannot be applied to federal prosecutors at the grand jury stage without violating the Supremacy Clause of the United States Constitution; and 3) granted the federal defendants' motion for summary judgment in part, holding Local Rule 3.8(f) as applied to trial subpoenas within the district court's rule-making authority. *Almond v. U.S. Dist. Court for Dist. of R.I.*, 852 F.Supp. 78 (D.N.H.1994). These cross-appeals followed.

## STANDARD OF REVIEW

■ The material facts are undisputed. We review *de novo* the district court's rulings of law made in connection with a summary judgment motion. *See LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994).

## DISCUSSION

We addressed the nearly identical issues presented in this case previously in *United States v. Klubock*, 832 F.2d 649, 653–54 (1st Cir.1986) ("*Klubock I* "), *vacated*, 832 F.2d 664 (1st Cir.1987) (en banc by an equally divided court) ("*Klubock II* "). In *Klubock I*,

we held that the United States District Court for Massachusetts has the power to adopt an ethical rule ("PF 15") similar to the Rhode Island rule at issue in this case. The original panel opinion in *Klubock I* was withdrawn, however, when we accepted a petition for rehearing *en banc*. Upon rehearing *en banc*, the full court split three-to-three, therefore affirming, by an equally divided court, the district court decision upholding the ethical rule in question. *United States v. Klubock*, 832 F.2d 664 (1st Cir.1987), *aff'g by equally divided court*, 639 F.Supp. 117 (D.Mass. 1986).[6] Neither *Klubock I* nor *Klubock II* are controlling precedent, although the reasoning of both decisions remains of potential persuasive authority. *See Trans World Airlines v. Hardison*, 432 U.S. 63, 73 n. 8, 97 S.Ct. 2264, 2271 n. 8, 53 L.Ed.2d 113 (1977). *See also* Charles A. Wright, *The Law of Federal Courts* 758 (4th ed. 1983).

In *Klubock I*, we recognized the ethical and legal implications of prosecutors subpoenaing attorneys for the purpose of compelling evidence concerning their clients. We noted that the serving of a grand jury subpoena on an attorney to compel evidence concerning a client may: 1) chill the relationship between lawyer and client; 2) create an immediate conflict of interest for the attorney/witness; 3) divert the attorney's time and resources away from his client; 4) discourage attorneys from providing representation in controversial criminal cases; and 5) force attorneys to withdraw as counsel because of ethical rules prohibiting an attorney from testifying against his client.[7] We also noted the potential for abusive use of the attorney-subpoena. *Klubock I*, 832 F.2d at 653–54. *See also In re Grand Jury Matters (Hodes and Gordon)*, 593 F.Supp. 103, 106 (D.N.H.) (quashing subpoenas and characterizing actions of U.S. Attorney in serving subpoenas on counsel as "without doubt harassing"), *aff'd*, 751 F.2d 13

---

**5.** The case was originally brought in the United States District Court for Rhode Island, and subsequently transferred to the United States District Court for New Hampshire.

**6.** For a discussion of how PF 15 has fared in Massachusetts, *see generally* David Hoffman et al., *Attorney Subpoenas and Massachusetts Rule PF 15*, 95 Mass.L.Rev. (Summer 1989).

**7.** *See, e.g.*, Model Code of Professional Responsibility DR 5–101(B), DR 5–102 (1980); Model Rules of Professional Conduct Rule 3.7(a) (1987) (prohibiting lawyer from acting as both advocate and witness whenever "the lawyer is likely to be a necessary witness"). *See also United States v. Diozzi*, 807 F.2d 10, 12–13 (1st Cir.1986) ("[A]ttorneys [can]not serve the dual roles of defense counsel and sworn government witnesses in the same trial.").

(1st Cir.1984). Other courts have acknowledged similar concerns. *See, e.g., In re Special Grand Jury No. 81–1,* 676 F.2d 1005, 1009 (4th Cir.1982) (issuance of subpoena may cause client to distrust attorney and terminate relationship), *rev'd on other grounds,* 697 F.2d 112 (4th Cir.1982) (en banc).[8]

The central question on appeal in this case is whether the United States District Court for Rhode Island has the power to adopt a local rule that requires a federal prosecutor, at either the grand jury or trial stage, to obtain judicial approval before serving a subpoena on counsel to compel evidence concerning a client. We conclude that the federal district court has the power to adopt such a rule.

## I. *The District Court's Rule–Making Authority*

The authority of the United States District Courts to adopt or promulgate rules emanates from three sources. First, Congress has vested the Supreme Court with the authority to prescribe rules of practice and procedure for the federal courts. 28 U.S.C. § 2072(a). Pursuant to that authority, the Supreme Court has adopted Federal Rule of Criminal Procedure 57 ("Rule 57"), which provides that each district court may from time to time make or amend rules governing its practice, provided the rules are consistent with the Federal Rules of Criminal Procedure.[9] *See also* Fed.R.Civ.P. 83 (civil analogue). Second, Congress has vested federal district and circuit courts with the independent authority to prescribe local rules of practice consistent with Acts of Congress and the rules of practice and procedure promulgated by the Supreme Court. 28 U.S.C. § 2071(a).[10] Finally, the Supreme Court has long recognized that district courts have certain inherent rule-making powers arising from the nature of the judicial process. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991); *Link v. Wabash Railroad Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *United States v. Hudson,* 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812) ("Certain implied powers must necessarily result to our Courts of justice from the nature of their institution.").

■ Consistent with these principles, the Supreme Court has upheld the authority of district courts to promulgate local rules unless 1) the rule conflicts with an Act of Congress; 2) the rule conflicts with the Federal Rules of Criminal Procedure; 3) the rule is constitutionally infirm; or 4) the subject matter governed by the rule is not within the power of the district court to regulate. *See Frazier v. Heebe,* 482 U.S. 641, 654, 107 S.Ct. 2607, 2616, 96 L.Ed.2d 557 (1986) (Rehnquist, C.J., dissenting) (citing *Colgrove v. Battin,* 413 U.S. 149, 159–60, 162–64, 93 S.Ct. 2448, 2454, 2455–57 (1973); *Miner v. Atlass,* 363 U.S. 641, 651–52, 80 S.Ct. 1300, 1306–07, 4 L.Ed.2d 1462 (1960); *Story v. Livingston,* 38 U.S. (13 Pet.) 359, 368, 10 L.Ed. 200 (1839)).

**8.** In *United States v. Perry,* 857 F.2d 1346, 1347 (9th Cir.1988), the Ninth Circuit noted that the government's increasing use of grand jury subpoenas on a target's counsel

has been almost universally criticized by courts, commentators and the defense bar because it is viewed as a tool of prosecutorial abuse and as an unethical tactical device US Attorneys employ to go on a "fishing expedition" with legal counsel without first pursuing alternative avenues to get the information. Many feel, and with some justification, that whatever benefit the government derives from this practice comes at the direct expense of the attorney-client relationship. Among the perceived costs, for example, are the potential loss of a client's choice of counsel should the latter be compelled to testify at the trial and the chilling effect upon the client's trust in his counsel's loyalty.

**9.** Rule 57 of the Federal Rules of Criminal Procedure provides in pertinent part:

Each district court by action of a majority of the judges thereof may from time to time, after giving appropriate public notice and an opportunity to comment, make and amend rules governing its practice not inconsistent with these rules.... In all cases not provided for by rule, the district judges and magistrate judges may regulate their practice in any manner not inconsistent with these rules or those of the district in which they act.

**10.** 28 U.S.C. § 2071(a) states:

The Supreme Court and all courts established by Act of Congress may from time to time *prescribe rules for the conduct of their business.* Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed by the Supreme Court. (emphasis added).

In addition, the Supreme Court has struck down a local rule which it deemed "unnecessary and irrational." *Id.* at 646 (majority opinion). It follows that Local Rules are presumptively valid unless they contravene one of the five principles mentioned above.

Plaintiffs argue that Local Rule 3.8(f) is invalid, as applied to grand jury subpoenas, because it regulates a subject matter which is beyond the rule-making authority of the district court. In addition, plaintiffs contend that the Rule is invalid, both as applied to grand jury and trial subpoenas, because it conflicts with Rules 17 and 57 of the Federal Rules of Criminal Procedure. We begin by addressing Local Rule 3.8(f) as it applies to grand jury subpoenas.

Other than our two opinions in *Klubock*, the Third Circuit is the only federal appeals court to address whether a federal district court has the power to adopt a local ethical rule providing for pre-service, judicial screening of attorney-subpoenas. In *Baylson v. Disciplinary Board of the Supreme Court of Pennsylvania*, 975 F.2d 102 (3d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1578, 123 L.Ed.2d 147 (1993), the Third Circuit struck down a local rule similar to the one in this case on the grounds that it conflicted with both Rules 17 and 57 of the Federal Rules of Criminal Procedure. The court did not address the question, however, of whether the local rule regulates a subject matter beyond the district court's rule-making authority. It is upon this latter ground that the district court in this case struck down Local Rule 3.8(f) as applied to grand jury subpoenas. We address this issue first.

## II. *Power of District Court to Regulate Grand Jury Subpoenas*

■ A federal court has the "inherent power ... to control admission to its bar and to discipline attorneys who appear before it." *Chambers*, 501 U.S. at 43, 111 S.Ct. at 2132 (citing *Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 531, 6 L.Ed. 152 (1824)). *See also Culebras Enterprises Corp. v. Rivera–Ríos*, 846 F.2d 94, 97 (1st Cir.1988) ("[i]t is well settled in this circuit that the district court has the duty and responsibility to supervise the conduct of attorneys who appear before it") (ci-

tations omitted); *United States v. Claros*, 17 F.3d 1041, 1046–47 (7th Cir.1994); *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 569 (3d Cir.1985). The Supreme Court has implied that the power to regulate the conduct of attorneys derives also from statutory authority. *See Frazier*, 482 U.S. at 645, 107 S.Ct. at 2611 (district court has "discretion to adopt local rules that are necessary to carry out the conduct of its business [and this authority] includes the regulation of admissions to its own bar") (citing 28 U.S.C. §§ 1654, 2071; Fed.R.Civ.P. 83). *See also Greer's Refuse Serv., Inc. v. Browning–Ferris Indus.*, 843 F.2d 443, 446 (11th Cir.1988) ("federal courts have clear statutory authority to promulgate rules governing the admission and conduct of the attorneys who practice before them").

■ Whether considered statutory or inherent in derivation, we have little difficulty concluding that the greater power of disbarring attorneys for unethical behavior necessarily includes the lesser power of erecting reasonable prophylactic rules to regulate perceived abuses by attorneys appearing before the court. *Cf. Chambers*, 501 U.S. at 45, 111 S.Ct. at 2133 (power to dismiss lawsuit for conduct abusing judicial process includes the "less severe sanction" of imposing attorney's fees). The question remains, however, whether, considering the special role assigned the grand jury in our justice system, Local Rule 3.8(f) regulates a subject matter beyond the district court's rule-making authority.

### A. *The Special Role of the Grand Jury*

■ The grand jury occupies a unique place in our justice system. It is not assigned by the Constitution to any of the three branches of government, and therefore acts independently of each. The Supreme Court has explained: "[T]he whole theory of the [grand jury's] function is that it belongs to no branch of the institutional government, serving as a kind of buffer or referee between the Government and the people." *United States v. Williams*, 504 U.S. 36, 46–48, 112 S.Ct. 1735, 1742, 118 L.Ed.2d 352 (1992). The grand jury's "specialness" is manifested in five ways pertinent to this

case: 1) its independence from the court's supervision; 2) its broad investigative powers; 3) the presumption of validity accorded its subpoenas; 4) the secrecy of its proceedings; and 5) its general freedom from procedural detours and delays. *See id.* (citations omitted); *United States v. R. Enterprises,* 498 U.S. 292, 298–301, 111 S.Ct. 722, 726–28, 112 L.Ed.2d 795 (1991) (citations omitted).

Plaintiffs maintain that Local Rule 3.8(f) impermissibly interferes with these five special attributes of the grand jury. They contend that Local Rule 3.8(f), therefore, regulates a subject matter beyond the district court's rule-making authority because it "directly contravenes the central principles underlying the essential role and function of the grand jury in the federal criminal justice system." The district court agreed, holding that "the district court cannot enforce Local Rule 3.8(f) because it assumes a power that the court does not have—the power to fundamentally alter the historic relationship between the grand jury and its constituting court." *Almond,* 852 F.Supp. at 86 (citing *Williams,* 504 U.S. at 50–52, 112 S.Ct. at 1744).

■ We disagree with the district court for three reasons. First, Local Rule 3.8(f) is a prophylactic rule aimed at, and principally affecting, *prosecutors,* not the grand jury. As such, the Rule regulates the conduct of attorneys appearing before the court—a power well within the limits of a federal district court's rule-making authority—and not the grand jury *per se.* Second, we think the district court's reliance on *Williams* is misplaced. Finally, any incidental effect the Rule has on the grand jury is minimal, and outweighed by the important interests served by the rule.

### B. *Effect of Local Rule on Grand Jury Functions*

Local Rule 3.8(f) does not impede the grand jury's independence because it does not affect subpoenas sought by the grand jury acting independently. The plain language of the Rule demonstrates that it applies to "[t]he prosecutor in a criminal case." As we pointed out in *Klubock I,* concerning a virtually identical ethical rule:

> PF 15 is not aimed at *grand jury* action. It deals solely with prosecutorial conduct in the prosecutor's capacity as a member of the bar. If, in fact, a grand jury acting independently of any prosecutorial influence issues a subpoena against an attorney/witness, the attorney/witness must honor it, or move to quash the subpoena in an appropriate manner. Such independent action by a grand jury has no relevance to PF 15 because none of the ethical concerns previously mentioned are implicated.

*Klubock I,* 832 F.2d at 658. The distinction is critical because, although the potential damage to the attorney-client relationship exists regardless of who seeks the subpoena, the attorney-to-attorney *ethical* concerns that the Rule was designed to mitigate are not implicated when the grand jury, acting independently, seeks to subpoena counsel.[11] The Rule, as written, acts only as a prophylactic aimed at perceived deleterious action by one litigating attorney against opposing counsel.

Nor does the Rule affect the grand jury's broad investigative powers—often described as the grand jury's "right to every man's evidence." *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d 626 (1972). First and foremost, the Rule makes no change in substantive law. It merely authorizes district courts to reject a prosecutor's attorney-subpoena application for the traditional reasons justifying the quashing of a subpoena—that is, the subpoena request would be denied if the evidence sought is protected by a constitutional, common-law, or statutory privilege, or, the court determines that compliance with the subpoena would be "unreasonable or oppressive." *See id.* (citations omitted); *In re Grand Jury Matters,*

---

11. We have noted that, although they are issued under the district court's name and for the grand jury, "[t]hese subpoenas are 'in fact almost universally instrumentalities of the United States Attorney's office or some other department of the executive branch.'" *In re Grand Jury Matters,*

751 F.2d at 16 (quoting *In re Grand Jury Proceedings (Schofield),* 486 F.2d 85, 90 (3d Cir.1973)). *See also In re Grand Jury Subpoena: Subpoena Duces Tecum,* 829 F.2d 1291, 1296–97 (4th Cir. 1987).

751 F.2d at 17–18 (Fed.R.Crim.P. 17(c)).[12] Local Rule 3.8(f) does not keep any evidence from reaching the grand jury which would not potentially have been kept from it anyway. Therefore, it does not disturb the grand jury's broad investigative powers.[13]

In effect, Local Rule 3.8(f) merely changes the timing with respect to motions to quash in recognition of the fact that service itself of an attorney-subpoena seeking to compel evidence concerning a client may cause irreparable damage to the attorney-client relationship. *See Klubock I*, 832 F.2d at 653 ("The serving of a subpoena under such circumstances will immediately drive a chilling wedge between the attorney/witness and his client."). From the moment that the subpoena is served on counsel, until the issue of its validity is resolved, the client resides in a state of suspended animation, not knowing whether his attorney will testify against him and perhaps be required to withdraw his representation. The uncertainty is heightened by the fact that the common law of attorney-client privilege is still evolving to address the concerns implicated by new federal laws relating to client identity and fee arrangements. *Compare United States v. Gertner*, 873 F.Supp. 729 (D.Mass.1995) (in case of first impression in this circuit, holding that identification of attorney's client, as required by 26 U.S.C. § 6050I, is protected from disclosure by attorney-client privilege) *with United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 505 (2d Cir.1991) (holding that the information is not protected by attorney-client privilege). In addition, service of a subpoena opens a second front which counsel must defend with her time and resources, thus diverting both from the client. That the defense counsel's *adversary* can bring about these consequences raises manifest ethical concerns, properly addressed by a rule directed at regulating the attorney-to-attorney relationship.

We also reject plaintiffs' argument that Local Rule 3.8(f) contravenes the historic "secrecy" of grand jury investigations. Nothing in the text of the Rule prohibits the filing of attorney-subpoena applications to the court under seal or *in camera*. Nor does the Rule prohibit the court from holding an *ex parte, in camera* hearing. District courts routinely use *in camera* procedures to maintain grand jury secrecy in the context of post-service motions to quash. *See R. Enterprises, Inc.*, 498 U.S. at 302, 111 S.Ct. at 728. Moreover, because the grounds upon which a district court may reject an attorney-subpoena application mirror those for quashing a subpoena, the prosecutor will be required to divulge no more information with respect to the grand jury's investigation than it would in responding to a motion to quash.[14]

Finally, there is nothing in the text of Local Rule 3.8(f) which would subject the grand jury to unusual procedural delays or detours. As noted, the Rule only affects subpoenas sought by prosecutors for use at the grand jury proceeding. It is not applica-

---

**12.** To the extent that the Comment to Local Rule 3.8(f), see Appendix A, suggests a broader basis for rejecting a subpoena application, we point out that the Comment cannot substantively change the text of the Rule. Indeed, the Rhode Island Rules of Professional Conduct provide that the "Comments do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules." The Rhode Island Supreme Court Rules also provide that "the Comments are intended for interpretation, but the text of each Rule is authoritative." Rhode Island Supreme Court Rule 47. Moreover, federal district courts cannot effect substantive changes in the law through local rulemaking. We presume that district court judges will apply Local Rule 3.8(f) consistently with both its text and applicable law. Plaintiffs' speculative arguments with respect to how particular judges might apply the Comment to the Rule are, at this point, irrelevant.

**13.** For similar reasons, Local Rule 3.8(f) does not affect the presumed validity of grand jury subpoenas.

**14.** Plaintiffs argue that the secrecy of grand jury proceedings will be compromised because the Comment to Rule 3.8(f) states that judicial approval should be granted or denied after an "adversarial hearing." As we have noted, the Comment to the Rule is merely a non-binding guideline. *Supra* n. 12. District court judges will determine, based on their experience and professional judgment, the best way to comply with the Rule and maintain grand jury secrecy. In some cases an *in camera* adversarial hearing might be appropriate and in others it might not. This, of course, is the kind of decision district court judges routinely make in the exercise of their discretion.

ble to subpoenas sought by a grand jury acting independently. It therefore will not usually have any delaying effect on the grand jury's investigation. Furthermore, any procedural delay or detour which does result would be minimal—presumably no greater than that caused by a traditional motion to quash a subpoena issued at the grand jury stage. As explained below, we think any minimal delay is outweighed by the benefits of the Rule.

We made many of these points in *Klubock I*. In striking down the ethical rule in this case, however, the district court reasoned that the Supreme Court's recent decision in *Williams*, 504 U.S. 36, 112 S.Ct. 1735, 118 L.Ed.2d 352, negates any persuasive authority *Klubock I* has with respect to grand jury subpoenas.

### C. United States v. Williams

*Williams* held that a district court does not have the power to dismiss an otherwise valid indictment because the government failed to disclose substantial exculpatory evidence to the grand jury. In doing so, the Court announced the following principles, upon which the district court relied in striking down Local Rule 3.8(f) as applied to grand jury subpoenas.

> These authorities suggest that any power federal courts may have to fashion, on their own initiative, rules of grand jury procedure is a very limited one, not remotely comparable to the power they maintain over their own proceedings. *It certainly would not permit judicial reshaping of the grand jury institution, substantially altering the traditional relationships between the prosecutor, the constituting court, and the grand jury itself.*

*Williams*, 504 U.S. at 50, 112 S.Ct. at 1744 (citations omitted) (emphasis added). Citing the history of the grand jury, both in England and the United States, the *Williams* Court explained that the grand jury sits in order to assess whether there is an adequate basis for bringing a criminal charge, rather than to determine guilt or innocence. Therefore, "requiring the prosecutor to present exculpatory evidence as well as inculpatory evidence would *alter the grand jury's histori-*

*cal role, transforming it from an accusatory to an adjudicatory body." Id.* (emphasis added).

It can hardly be said that Local Rule 3.8(f) would "alter the grand jury's historic role" in such a fundamental fashion. It certainly does not transform the grand jury from an accusatory to an adjudicatory body. Indeed, it has no effect whatsoever on the grand jury's accusatory role. Nor does it alter the traditional relationships between prosecutor, court, and grand jury. As we have noted, regulation of attorney conduct is a traditional role for the court—one for which it is particularly well positioned and suited, and one which has never been considered within the purview of the grand jury. Moreover, the Rule has no effect on the evidence ultimately presented by the government. It merely allows the court to determine, before an attorney-subpoena is served, and the damage to the attorney-client relationship caused, whether grounds exist which would render the subpoena subject to an order to quash. Unlike the situation in *Williams*, Local Rule 3.8(f) does not affect the traditional equation upon which the grand jury deliberates to assess whether there is an adequate basis for bringing criminal charges.

We think *Williams* is clearly distinguishable on the above grounds alone. We note in addition, however, that *Williams* involved the use of a federal court's "supervisory power" to *dismiss* an indictment, while this case involves a district court's power merely to regulate the conduct of attorneys appearing before it. The supervisory power derives from the need for courts "to implement a remedy for violation of recognized rights, to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury, and . . . to deter illegal conduct." *United States v. Hastings*, 461 U.S. 499, 505, 103 S.Ct. 1974, 1978, 76 L.Ed.2d 96 (1982) (citations omitted). In contrast, the power of a court to regulate the conduct of attorneys appearing before it derives not from a need to remedy or deter violations of defendants' rights, but from the professional relationship between the court and attorneys appearing before it. *See Theard v. United States*, 354

U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957) ("The court's control over a lawyer's professional life derives from his relation to the responsibilities of a court."); *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792, 95 S.Ct. 2004, 2015–16, 44 L.Ed.2d 572 (1975) ("The interests of the States in regulating lawyers is especially great since lawyers are essential to the primary governmental function of administering justice, and have historically been 'officers of the courts.'"). Thus, the source and purpose of the two powers distinguishes them.

■■■■ The nature and extent of the power exercised also differ. When a federal court uses its supervisory power to dismiss an indictment it directly encroaches upon the fundamental role of the grand jury. That power is appropriately reserved, therefore, for extremely limited circumstances. *See Bank of Nova Scotia v. U.S.*, 487 U.S. 250, 263, 108 S.Ct. 2369, 2378, 101 L.Ed.2d 228 (1988) ("District Court had no authority to dismiss the indictment on the basis of prosecutorial misconduct absent a finding that petitioners were prejudiced by such misconduct"). In contrast, the power of a court to regulate the conduct of attorneys appearing before it is traditionally invoked only to impose a sanction, monetary or otherwise, on the offending party, or to recommend disciplinary proceedings. *See, e.g., United States v. Claros*, 17 F.3d 1041, 1046–47 (7th Cir. 1994); *Harlan v. Lewis*, 982 F.2d 1255, 1259–60 (8th Cir.1993); *Zambrano v. City of Tustin*, 885 F.2d 1473, 1477–80 (9th Cir.1989). It stands to reason that the more severe the sanction, the more extensive the source of power needed to impose it, and the more closely that power must be circumscribed. It follows that the converse is also true. *See Chambers*, 501 U.S. at 45, 111 S.Ct. at 2133.

For these reasons, we conclude that *Williams* is not dispositive of the distinct issues in this case. Nor do we think that it vitiates the persuasive authority of our reasoning in *Klubock I*.

### D. The Benefits of Local Rule 3.8(f)

In many ways, the attorney-client relationship is the heart of our adversarial system of justice. This is particularly true in criminal cases. *See generally* Monroe H. Freedman, *Understanding Lawyers' Ethics* 16 ("the lawyer is the client's 'champion against a hostile world'—the client's zealous advocate against the government itself"). Clients rely extensively on their attorneys' judgment, advice, and professional competence. Moreover, as legal rules and obligations become more complex, clients are forced to rely increasingly on their attorneys, thus elevating the importance of the attorney-client relationship.

The relationship between attorney and client is often an ongoing one, built upon years of professional and social interaction. On other occasions it arises out of a single incident. Sometimes the client and attorney have never met before. Although the dynamics of these relationships differ, the fundamental responsibilities of attorney to client are the same. Attorneys must diligently and competently represent their clients' interests, keep their clients' confidences, and not place themselves in situations where their interests conflict with those of their clients.[15] To fulfill their responsibilities, attorneys need information from their clients. It is necessary to the very foundation of our adversarial system of justice that clients feel secure in divulging to their attorneys the facts in their possession, including those that clients think might be incriminating. *See generally* 1 *McCormack on Evidence* § 87, at 316–17 (4th ed. 1992) (describing the importance of attorney loyalty to the client); Stern & Hoffman, *supra*, at 1826–27 (stressing the need

**15.** *See, e.g.,* Model Rules of Professional Conduct Rule 1.1 ("A lawyer shall provide competent representation[, which] requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."); Rule 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client."); Rule 1.4(a) (duty to "keep a client reasonably informed about the status of a matter"); Rule 1.6 (general rule of confidentiality); Rule 1.7 (general rule regarding conflicts of interest); Rule 1.8(b) ("A lawyer shall not use confidences to the client's disadvantage"); Rule 1.9(b) (same for former client). Many of these ethical rules codify similar requirements contained in contract and agency law. *See* Stephen Gillers, *What We Talked About When We Talked About Ethics: A Critical View of the Model Rules*, 46 Ohio St.L.J. 243, 247–48 (1985) (collecting cases).

for open communication between attorney and client).

A body of substantive law and ethical rules has evolved over the years with the purpose of creating an atmosphere in which free and unfettered communication between attorney and client is, to the greatest extent, encouraged. *See supra* n. 15. We are concerned with the systemic nature of the attorney-client relationship because of the dynamic inherent in that relationship—the client generally knows the facts and the lawyer generally knows the law. While the law cannot "legislate" a trusting and open attorney-client relationship, it can encourage it, or, at least, seek to mitigate those situations which might discourage it.

This was precisely the rationale underlying the Supreme Court's decision in *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947), in which the Court held that attorney work product is privileged. The Court emphasized the need for the attorney-client relationship to be "free from unnecessary intrusion by opposing parties and their counsel" and noted that introducing attorney work product into evidence would lead to "[i]nefficiency, unfairness and sharp practices ... in the giving of legal advice and in the preparation of cases for trial." The Court concluded: "The effect on the legal profession would be demoralizing. And the interests of the causes of justice would be poorly served." *Id.*

Local Rule 3.8(f) effectively enables the district court judge to resolve issues with respect to the attorney-subpoena prior to service, in a manner similar to that in a motion to quash hearing, therefore avoiding, in appropriate cases, the detrimental effects to the attorney-client relationship caused by service of a prosecutorial subpoena upon the attorney. We think that Local Rule 3.8(f) serves similar interests as those noted in *Hickman*,[16] and that its prophylactic nature

is consistent with the Supreme Court's recognition that the district court's supervision over the grand jury's subpoena power may be "properly exercised ... *to prevent the wrong before it occurs.*" *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (emphasis added).

We also think the district court is in a much better position than this court to evaluate the need for an ethical rule *regulating the practice of its officers,* at both the grand jury and trial stages.[17] As Justice Frankfurter explained in upholding the power of district courts to promulgate and enforce rules concerning disbarment of attorneys:

> [T]he state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom ... lawyers are included. *The court's control over a lawyer's professional life derives from his relation to the responsibilities of a court*.... 'Membership in the bar is a privilege burdened with conditions. The appellant was received into that ancient fellowship for something more than private gain. He became an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice.'

*Theard*, 354 U.S. at 281, 77 S.Ct. at 1276 (emphasis added) (quoting *People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 162 N.E. 487, 489 (1928) (Cardozo, J.)) (other citations omitted). The judges of the federal district court in Rhode Island are in a position to observe the subpoena practices of attorneys appearing before them. Those judges with more than a few years on the bench have witnessed the increased use of the attorney subpoena as an investigative tool and have been called upon to rule on motions to quash. Considering their acknowledged authority to regulate the conduct of attorneys appearing before them, and to preserve judicial integrity, we think their determination that Local Rule 3.8(f) was necessary to regulate the

---

**16.** In contrast to *Hickman*, of course, the Rule in this case does not create new substantive law with respect to the attorney-client privilege. Rather, it merely seeks to avoid unnecessary harm to the attorney-client relationship.

**17.** We note that the parties are "before the court" once a subpoena is issued under the

court's seal. *See Matter of Certain Complaints under Investigation*, 783 F.2d 1488, 1495 (11th Cir.1986) (noting that when a subpoena bearing the court's seal is issued by its clerk, it becomes "an instrument of the court's process"), *cert. denied*, 477 U.S. 904, 106 S.Ct. 3273, 91 L.Ed.2d 563 (1986).

increased use of the attorney subpoena by federal prosecutors deserves considerable weight.[18]

Based on the foregoing considerations, we conclude that the minimal effect Local Rule 3.8(f) might have on the grand jury's traditional functions is outweighed by the important, systemic concerns addressed by Local Rule 3.8(f). We therefore conclude that Local Rule 3.8(f) regulates a subject matter within the district courts' rule-making authority. We turn now to the question of whether the Rule is inconsistent with the Federal Rules of Criminal Procedure.

### III. Federal Rules of Criminal Procedure

In *Baylson*, the Third Circuit struck down a virtually identical local rule ("Local Rule 3:10") on the grounds that it was inconsistent with both Rules 17 and 57 of the Federal Rules of Criminal Procedure and, therefore, beyond the district court's rule-making authority. The district court in this case rejected the *Baylson* court's reasoning and conclusion with respect to Rules 17 and 57. For much the same reasons, we do as well.

### A. Rule 17[19]

The *Baylson* court offered the following reasons for its conclusion that Local Rule 3:10 is inconsistent with Rule 17. First, the court noted that neither Rule 17 nor any provision in the federal rules or an Act of Congress "*allows* for judicial intervention before a subpoena is served." Second, the court stated that the local rule "impermissi-

bly extends the ministerial role *granted* the district courts in subpoena practice." Finally, while conceding that "there may not be a literal conflict between" the two rules, the court reasoned that the two were inconsistent "because nothing in Rule 17 grants to the district court what Rule 3.10 purports to by means of a local rule: the *power* to screen grand jury subpoenas prior to service." *Id.* at 108 (emphasis added in each quotation).

 We reject *Baylson*'s reasoning with respect to Rule 17. It simply does not follow analytically or jurisprudentially that a local rule is "inconsistent" with a criminal rule of procedure merely because neither the federal rules nor an Act of Congress explicitly grant district courts the power to promulgate the specific local rule. As noted, district courts have the general power to adopt local rules pursuant to Federal Rule of Criminal Procedure 57, 28 U.S.C. § 2071(a), and their inherent rule-making authority. It might be argued that neither Rule 57, § 2071(a), nor the court's inherent rule-making power provide the necessary *authority* for a district court to regulate this particular subject matter, but this inquiry is entirely separate from whether the ethical rule is *inconsistent* with Rule 17. By premising its consistency analysis on whether a federal rule or statute provides the specific authority to adopt the local rule, *Baylson* turned the proper inquiry on its head—evaluating the Rule as if local rules are presumptively invalid. This presumption is wholly unsupported. *See, e.g., Colgrove v. Battin,* 413 U.S. 149, 93 S.Ct. 2448, 37

---

**18.** Plaintiffs argue that the Rule is unnecessary because Justice Department Guidelines place strict controls on federal prosecutors seeking to subpoena counsel and, therefore, adequately protect the attorney-client relationship. *Supra.* The question in this case, however, is not whether there are other ways to protect the attorney-client privilege; the question is whether the district court has the *power* to adopt *this* Rule. We also note that the judges of the federal district court in Rhode Island presumably did not take such a sanguine view of the Justice Department's ability to police its own. If so, they would not be alone in this view. After discovering that no disciplinary action had been taken by the Department of Justice against ten prosecutors found by federal courts to have engaged in misconduct, for example, a Congressional Committee recently observed:

[R]epeated findings of no misconduct, and the Department's failure to explain its disagreements with findings of misconduct by the Courts raises serious questions regarding what the Department considers "prosecutorial misconduct ... within the meaning of either the *Model Code of Professional Responsibility* or the Standards of Conduct in the Department of Justice."

H.R.Rep. No. 986, 101st Cong., 2d Sess. 23 (1990). *See also U.S. v. Hastings,* 461 U.S. 499, 522, 103 S.Ct. 1974, 1987, 76 L.Ed.2d 96 (1983) (Brennan, J., concurring in part and dissenting in part) (describing the "futility of relying on Department of Justice disciplinary proceedings").

**19.** The full text of Rule 17 is reprinted at Appendix B.

L.Ed.2d 522 (1973); *Link*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).[20]

■ The proper method for determining whether a local rule is inconsistent with a federal rule of procedure is to inquire, first, whether the two rules are textually inconsistent and, second, whether the local rule subverts the overall purpose of the federal rule. *See Hawes v. Club Ecuestre Comandante*, 535 F.2d 140, 144 (1st Cir.1976).

■ We agree with the district court that the two rules are not textually inconsistent. There is simply nothing in Rule 17 which prohibits pre-service involvement in the subpoena process by the district court judge.[21] Plaintiffs do not seriously contest this point but argue, instead, that Local Rule 3.8(f) contravenes the "underlying policy of Rule 17" to maintain the historic limits on the court's involvement in the grand jury subpoena process. Plaintiffs maintain that Rule 17 purposefully confines the court's role in the subpoena process to "administrative functions, sanctioning refusals to comply with subpoenas, and quashing or modifying document subpoenas." Therefore, the argument goes, Rule 17's failure to address pre-service judicial intervention in the subpoena process

indicates an intention that there should be none.

The Supreme Court has indicated that silence in the federal rules should not be interpreted as a prohibition on local rule-making authority. In *Colgrove*, for example, the Court held that a local rule authorizing six-person juries for civil cases did not conflict with former Federal Rule of Civil Procedure 48, which provided that "[t]the parties may stipulate that the jury shall consist of any number less than twelve." The Court concluded that the two rules were not inconsistent because Rule 48 " 'deals only with a stipulation by *[t]he parties.*" It does not purport to prevent *court rules* which provide for civil juries of reduced size.' " *Colgrove*, 413 U.S. at 164, 93 S.Ct. at 2457 (quoting *Cooley v. Strickland Transportation Co.*, 459 F.2d 779, 784 (5th Cir.1972)). *See also United States v. Spock*, 416 F.2d 165, 180 (1st Cir.1969).[22] The mere fact that Rule 17 sets forth certain ways in which the district court is involved in the subpoena process does not, by negative implication, therefore establish that the *purpose* of the rule is to circumscribe judicial intervention in the subpoena process to only those functions specified in the Rule.[23]

**20.** The district court rejected the *Baylson* court's analysis with respect to Rule 17 for similar reasons.

By focusing on whether Rule 17 "allows" a district court to intervene in the subpoena process prior to service, the Third Circuit essentially held that local rules cannot authorize pre-service judicial review where Rule 17 does not itself authorize this practice. In other words, the court held that Rule 17's silence with respect to pre-service judicial review rendered local rules authorizing this practice inconsistent with the federal rule. I reject the interpretive premise because it too narrowly circumscribes the district courts' rulemaking power.

*Almond*, 852 F.Supp. at 84.

**21.** As the district court noted, Local Rule 3.8(f) is concerned only with the *service* of subpoenas on attorneys, not the issuance of subpoenas. This is not merely a difference in semantics. Local Rule 3.8(f) is a prophylactic rule designed to address certain perceived ethical concerns implicated by the increasing practice of federal prosecutors subpoenaing opposing counsel to compel testimony regarding a target client. These ethical concerns simply are not implicated by the issu-

ance of a subpoena because, until the attorney is served with the subpoena, the client has no reason to distrust or feel uncertain about his attorney's allegiance. *See Klubock I*, 832 F.2d 649 (noting the same with respect to PF 15).

**22.** Similarly, in *Link*, the Court held that the former version of Federal Rule of Criminal Procedure 41(b)—which provided that "a defendant may move for dismissal of an action" for failure to prosecute—did not, by negative implication, prohibit the court from dismissing an action *sua sponte* for failure to prosecute. The Court reasoned that "[n]either the *permissive* language of the Rule—which merely authorizes a motion by the defendant—nor its policy" indicate that the Rule was intended to "abrogate" the inherent power of federal courts to dismiss *sua sponte* for failure to prosecute. *Link*, 370 U.S. at 630–32, 82 S.Ct. at 1388–89 (emphasis added).

**23.** As the district court noted, although there is no procedure in Rule 17 for quashing a testimonial subpoena, courts have, on their own authority, extended the Rule's procedures regarding the quashing of document subpoenas to cover testimonial subpoenas.

Moreover, the Supreme Court has long recognized that rules regulating the conduct of attorneys practicing before them are within the local rule-making authority of the district courts. *See, e.g., Theard,* 354 U.S. at 281–83, 77 S.Ct. at 1276–77 (inherent power of district courts to promulgate and enforce rules concerning disbarment of attorneys). Local Rule 3.8(f) is a prophylactic ethical rule regulating the conduct of attorneys appearing before the court. Therefore, as in *Link,* a strong indication of intent to abrogate is required.

There is nothing in the text of Rule 17 to suggest it was intended to abrogate the power of a federal court to regulate the conduct of attorneys appearing before it. Nor have plaintiffs identified any historical evidence with respect to Rule 17 indicating that it was intended to abrogate this power. The Supreme Court's decision in *Miner v. Atlass,* 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed.2d 1462 (1960), is instructive in this regard. *Miner* held that a local rule authorizing discovery-deposition practice in admiralty cases was beyond the rule-making authority of the admiralty court. The Court has since explained that the decision in *Miner* was based on the fact that the Supreme Court itself had previously omitted the precise discovery procedure from among the Civil Rules adopted as part of the Admiralty Rules. *See Colgrove,* 413 U.S. at 163–64, n. 23, 93 S.Ct. at 2456 n. 23. The Court explained: *"Miner* held that this omission 'must be taken as an advertent declination of the opportunity to institute the discovery-deposition procedure of Civil Rule 26(a) throughout courts of admiralty.' " *Id.* (quoting *Miner,* 363 U.S. at 648, 80 S.Ct. at 1304–05). The court therefore held that the local rule was not consistent with the General Admiralty Rules. *Miner,* 363 U.S. at 647, 80 S.Ct. at 1304. *See also*

*Link,* 370 U.S. at 631–32, 82 S.Ct. at 1389 (stating that "[i]t would require a much clearer expression of purpose than Rule 41(b) provides for us to assume it was intended to abrogate" the inherent power of a court to dismiss *sua sponte* for failure to prosecute).

Although there is a history of grand jury independence from its constituting court, *see supra,* plaintiffs have directed us to no historical evidence—on a par with that, for example, in *Miner*—relating to the promulgation of Rule 17 to suggest that it was intended to codify this policy. The lack of historical evidence is particularly significant because Rule 17 was adopted in 1944, well prior to the line of Supreme Court cases setting the parameters of grand jury independence. *See generally United States v. Williams,* 504 U.S. 36, 112 S.Ct. 1735, 118 L.Ed.2d 352 (1992); *United States v. Dionisio,* 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). Furthermore, in most instances, there is simply no reason for judicial involvement in the subpoena process prior to service. Thus, the Rule's silence with respect to the issue does not necessarily imply anything other than silence. We therefore conclude that Local Rule 3.8(f) is not inconsistent with the text or purpose of Rule 17.[24]

### B. *Rule 57*

 *Baylson* also held, relying on the Comment to Rule 57, that the local rule is invalid because it "goes beyond the 'matters of detail' contemplated by [Rule] 57." *Baylson,* 975 F.2d at 108. We reject the *Baylson* court's reliance on the Comment to the Rule, rather than the text.[25] It is true that in ascertaining the meaning of the federal rules of procedure, "the construction given to them

---

**24.** We also reject plaintiffs' argument that Local Rule 3.8(f) is inconsistent with grand jury secrecy requirements contained in Federal Rule of Criminal Procedure 6(e). We agree with the district court that "the same secrecy issues arise in the context of post-service motions to quash, and district courts have routinely used *in camera* procedures to ensure that Rule 6(e) is not violated." *Almond,* 852 F.Supp. at 83–84 n. 6 (citing *United States v. R. Enterprises, Inc.,* 498 U.S. 292, 302, 111 S.Ct. 722, 728, 112 L.Ed.2d 795

(1991)). *See supra* at p. 1358 (discussing the secrecy issue).

**25.** The Advisory Committee's comment to Rule 57 provides that the purpose of the rule is to leave the individual courts free to regulate some "matters of detail", either by local rule or usage. The comment goes on to state that among such matters are "the mode of impanelling a jury, the manner and order of interposing challenges to jurors, the manner of selecting the foreman of a trial jury, the matter of sealed verdicts, the order

by the [Advisory] Committee is of weight." *Mississippi Pub. Corp. v. Murphree,* 326 U.S. 438, 444–45, 66 S.Ct. 242, 246, 90 L.Ed. 185 (1946). But the Comment cannot change the unambiguous language of a duly adopted federal rule. Thus, we agree with the district court that "the commentary to Rule 57 cannot limit the district courts' rulemaking power in ways not prescribed by the Rule's text." Moreover, *Baylson*'s conclusion that district courts' rule-making authority is limited to "matters of detail" is in direct conflict with the Supreme Court's decisions in *Colgrove,* 413 U.S. at 164, 93 S.Ct. at 2456 (upholding local rule providing for six-person juries) and *Theard* 354 U.S. at 281–83, 77 S.Ct. at 1276–77 (upholding rule concerning disbarment of attorneys), neither of which involved "matters of detail." Along this line, we have canvassed the Supreme Court's decisions with respect to district courts' local rule-making authority and found no cases that rely on the Comment to Rule 57. Finally, we point out that Rule 57, which was adopted in 1944, was rewritten in 1985 and now provides for "appropriate public notice and an opportunity to comment," and for review of local rules by the judicial council of the circuit. We think these additions indicate that, at least by 1985, it was clear that district courts' rule-making authority was not limited to mere "matters of detail."

For the foregoing reasons, we conclude that Local Rule 3.8(f), as applied to grand jury subpoenas, is a legitimate exercise of the rule-making authority of the United States District Court for Rhode Island. Accordingly, the district court's decision to the contrary is reversed.

### IV. *Trial Subpoenas*

The district court held that the United States District Court for Rhode Island has the power to adopt and enforce Local Rule 3.8(f), as applied to trial subpoenas. We agree. The analysis supporting our conclusion that Local Rule 3.8(f) is a valid exercise of the district court's rule-making authority, as applied to grand jury subpoenas,

applies with even more force with respect to trial subpoenas. The Supreme Court has recognized that the power of federal district courts to adopt rules regarding trials is broader than with respect to its power over the grand jury. *Williams,* 504 U.S. at 50–52, 112 S.Ct. at 1744. Moreover, because we conclude that Local Rule 3.8(f), as applied to grand jury subpoenas, is not inconsistent with either Rule 17 or Rule 57 of the Federal Rules of Criminal Procedure 17, it follows that it is not inconsistent with these Rules as applied to trial subpoenas.[26] Plaintiffs have presented us with no persuasive authority to the contrary. The district court's decision granting summary judgment for the federal defendants is, therefore, affirmed.

### V. *Issues Involving the State Version of Rule 3.8(f)*

Our decision that Local Rule 3.8(f) is a valid exercise of the federal district court's rule-making authority moots the issues raised by the state defendants with respect to the state version of Rule 3.8(f). We will briefly explain why.

The district court held that, because the federal version of Rule 3.8(f) is invalid as applied to grand jury subpoenas, enforcing the state version of Rule 3.8(f) against federal prosecutors practicing in federal court would violate the Supremacy Clause of the United States Constitution. The district court's Supremacy Clause analysis was premised on its holding that the federal version of the Rule is invalid. Because we conclude here that Local Rule 3.8(f) is a valid exercise of the federal district court's rule-making authority, it is the federal version of the Rule that will be enforced against federal prosecutors practicing in Rhode Island federal court. The Supremacy Clause is relevant only to state interference with federal laws. *See Hillsborough County v. Automated Medical Laboratories, Inc.,* 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). There is, therefore, no conflict with the Supremacy Clause, and the decision of the district court to the contrary is necessarily reversed.

---

of counsel's arguments to the jury, and other similar details."

**26.** As the district court noted, because "Rule 17 does not differentiate between grand jury and trial subpoenas, but instead sets out the basic

mechanics governing all types of subpoenas," the analysis with respect to Rule 17 "applies with equal force to both applications of Local Rule 3.8(f)." *Almond,* 852 F.Supp. at 91.

Similarly, the state defendants' contention that the district court lacked subject matter jurisdiction to review the validity of the state version of Rule 3.8(f) by virtue of the "*Rooker–Feldman*" doctrine is mooted by our decision upholding the federal version of Rule 3.8(f). *See Rooker v. Fidelity Trust Company*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 488, 103 S.Ct. 1303, 1317–18, 75 L.Ed.2d 206 (1983). That is, we have no occasion to address the state version of the Rule.

## CONCLUSION

For the reasons stated herein, we conclude that the United States District Court for Rhode Island has the rule-making authority to adopt and enforce Local Rule 3.8(f), as applied to both grand jury and trial subpoenas. The decision of the district court is *affirmed in part* and *reversed in part.*

### *Appendix A*

**Rule 3.8. Special Responsibilities of a Prosecutor.** The prosecutor in a criminal case shall:

\* \* \* \* \* \*

(f) not, without prior judicial approval, subpoena a lawyer for the purpose of compelling the lawyer to provide evidence concerning a person who is or was represented by the lawyer when such evidence was obtained as a result of the attorney-client relationship.

### COMMENT

\* \* \* \* \* \*

The prohibition in paragraph (f) was added because of the increasing incidence of grand jury and trial subpoenas directed toward attorneys. It is the belief of the committee that the requirements of prior judicial approval, which should be granted or denied after the opportunity for an adversarial proceeding, will serve as an appropriate safeguard to this practice and its threat to the confidentiality and integrity of the attorney-client relationship. The committee believes that a court called upon for judicial approval should be guided by appropriate standards. *See e.g., United States v. Klubock*, 832 F.2d 664 (1st Cir. 1987) (en banc). Accordingly, prior judicial approval should be withheld unless (1) the information sought is not protected from disclosure by an applicable privilege, (2) the evidence sought is essential to the successful completion of an ongoing investigation or prosecution and is not merely peripheral, cumulative, or speculative, (3) the subpoena lists the information sought with particularity, is directed at information regarding a limited subject matter in a reasonably limited period of time, and gives reasonable and timely notice, (4) the purpose of the subpoena is not to harass the attorney or his or her client, and (5) the prosecutor has unsuccessfully made all reasonable attempts to obtain the information sought from non-attorney sources and there is no other feasible alternative to obtain the information.

*See Report to the House Delegates,* ABA Criminal Justice Section, February 1988.

### *Appendix B*

**Rule 17. Subpoena**

**(a) For Attendance of Witnesses; Form; Issuance.** A subpoena shall be issued by the clerk under the seal of the court. It shall state the name of the court and the title, if any, of the proceeding, and shall command each person to whom it is directed to attend and give testimony at the time and place specified therein. The clerk shall issue a subpoena, signed and sealed but otherwise in blank to a party requesting it, who shall fill in the blanks before it is served. A subpoena shall be issued by a United States magistrate judge in a proceeding before that magistrate judge, but it need not be under the seal of the court.

**(b) Defendants Unable to Pay.** The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* application of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. If the court orders the subpoena to be issued the costs incurred by the process and the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government.

**(c) For Production of Documentary Evidence and of Objects.** A subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein. The court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive. The court may direct that books, papers, documents or objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence and may upon their production permit the books, papers, documents or objects or portions thereof to be inspected by the parties and their attorneys.

**(d) Service.** A subpoena may be served by the marshal, by a deputy marshal or by any other person who is not a party and who is not less than 18 years of age. Service of a subpoena shall be made by delivering a copy thereof to the person named and by tendering to that person the fee for 1 day's attendance and the mileage allowed by law. Fees and mileage need not be tendered to the witness upon service of a subpoena issued in behalf of the United States or an officer or agency thereof.

**(e) Place of Service.**

**(1) In United States.** A subpoena requiring the attendance of a witness at a hearing or trial may be served at any place within the United States.

**(2) Abroad.** A subpoena directed to a witness in a foreign country shall issue under the circumstances and in the manner and be served as provided in Title 28, USC § 1783.

**(f) For Taking Deposition; Place of Examination.**

**(1) Issuance.** An order to take a deposition authorizes the issuance by the clerk of the court for the district in which the deposition is to be taken of subpoenas for the persons named or described therein.

**(2) Place.** The witness whose deposition is to be taken may be required by subpoena to attend at any place designated by the trial court, taking into account the convenience of the witness and the parties.

**(g) Contempt.** Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued or of the court for the district in which it issued if it was issued by a United States magistrate judge.

**(h) Information Not Subject to Subpoena.** Statements made by witnesses or prospective witnesses may not be subpoenaed from the government or the defendant under this rule, but shall be subject to production only in accordance with the provisions of Rule 26.2.