### In re GRAND JURY.

No. 95–30036–MAP.

United States District Court, D. Massachusetts.

July 19, 2000.

*MEMORANDUM AND ORDER REGARD-*
*ING MOTION TO LEAVE TO SERVE*
*GRAND JURY SUBPOENA ON THE*
*ATTORNEY*

PONSOR, District Judge.

## I. INTRODUCTION

The background of this case is somewhat complex due to recent developments in the law. On November 18, 1999, the Government moved for leave to serve a grand jury subpoena on an Attorney (unnamed to preserve confidentiality). The Attorney opposed this motion on the grounds that it violated Rule 17 of the Federal Rules of Criminal Procedure and Rule 3.8(f) of the Massachusetts Rules of Professional Conduct as incorporated in Local Rule 83.6(4)(B) of the Local Rules for the United States District Court for the District of Massachusetts ("Rule 3.8(f)").

Rule 3.8(f) requires a prosecutor, prior to issuing a subpoena upon an attorney seeking evidence about the attorney's client, to obtain judicial approval *after* the attorney has the opportunity for an adversarial hearing. Although Rule 3.8(f) is titularly a Massachusetts rule, it has, as noted, been adopted by a Local Rule that makes all "ethical requirements and rules concerning the practice of law" in Massachusetts applicable in federal court. D.MASS.R. 83.6(4)(B).

This court held a hearing on February 17, 2000, in which counsel had an opportunity to argue whether the Government had complied with the requirements of Rule 3.8(f).[1]

Recently, the First Circuit decided *Stern v. United States Dist. Court for Dist. of Mass, et. al.*, 214 F.3d 4 (1st Cir.2000), *rehearing en banc* denied June 22, 2000 (three judges dissenting). There, the court held that Massachusetts Rule 3.8(f) "is without force or effect," in federal court. *Id.* at 21. The upshot of this ruling is that the district court must apply the previous standards applicable to motions to quash under Rule 17, not the stricter standard of Rule 3.8(f), to Government subpoenas directed at attorneys. *Id.* at 15. For purposes of this memorandum, then, the court will construe the Attorney's opposition to the Government's motion for leave as the equivalent of a motion to quash the subpoena pursuant to Rule 17. Since the court has concluded that the subpoena should not be enforced even under this more relaxed standard, the Government's motion for leave to serve the subpoena will be denied.

## II. BACKGROUND

Since 1992, the Attorney has represented a company and its owner ("Owner") who were allegedly in the business of assisting inventors in promoting their inventions and obtaining patents. The Owner filed for personal bankruptcy on September 6, 1995; the

---

1. The prior adversarial hearing mandated by Rule 3.8(f)(1) requires the prosecutor to show that he or she reasonably believes the information sought is not privileged, is essential and is not otherwise available.

Attorney is currently defending the Owner in a fraudulent conveyance action pending in the bankruptcy court. On October 24, 1995, the Federal Trade Commission ("FTC") brought a civil enforcement action against the Owner, his company and others, seeking an order enjoining certain alleged fraudulent practices. The Attorney also represented the Owner in this litigation.

Meanwhile, at some point in the mid–1990s a grand jury sitting in Massachusetts began investigating possible criminal activity on the part of the Owner. On April 15, 1999, he was indicted for conspiracy to commit mail fraud and money laundering, mail fraud, money laundering, filing false income tax returns, and aiding and abetting. The Owner is currently in custody awaiting trial, which is scheduled for February, 2001.

Although attorney Michael Reilly is currently counsel of record for the Owner in the criminal proceeding, the Attorney is also assisting Reilly in the criminal case. According to Reilly, the Attorney is effectively acting as co-counsel in the planning and preparation of the Owner's defense. *See* Opposition to Government's Motion, Docket No. 100 at 2. Reilly considers the Attorney's "participation in the criminal proceedings of the highest importance and essential to [the Owner's] defense." *Id.*

On November 18, 1999, the Government filed an *ex parte* motion for leave to serve a grand jury subpoena on the Attorney in accordance with the rule then existing. In addition to the charges he is already facing, the Owner is apparently also the target of an ongoing related grand jury investigation looking into bankruptcy fraud and other possible crimes.

According to the Government, the grand jury investigation has revealed suspicious transactions involving the Owner and the Attorney. These transactions arise from the sale of a piece of real estate known as 190 Narragansett Avenue, Newport, Rhode Island ("Newport Property") and the distribution of proceeds thereafter. Allegedly the Owner purchased the property in 1992 from the proceeds of the fraudulent activity charged in the current indictment. In 1993, the Owner transferred ownership of the Newport Property to American Nominee Trust ("ANT"), an entity he set up with his two daughters and son as trustees. At the same time, the Owner also transferred two other properties to ANT, a ski chalet in Dover, Vermont and his personal residence in Russell, Massachusetts.

According to an April 11, 1996 resolution by ANT, because the Owner was facing mounting civil and criminal proceedings, ANT agreed to loan him $600,000 to be used to cover legal fees for himself and a co-defendant. The form of the loan, however, could not be cash, since ANT only possessed real estate. Instead, ANT lent the Owner the money in the form of a promissory note secured by a mortgage on the Newport Property. The Owner then pledged the note and mortgage to the Attorney as security for his fees and costs.

On May 2, 1996, the Attorney released the mortgage, presumably in anticipation of the sale of the property. On May 10, 1996 the Newport Property was sold for about $1.1 million. Upon its sale, a $600,000 check was deposited in the Attorney's client account, and the remainder of the money went to ANT, which allegedly used it to buy, renovate and furnish a condominium for the Owner in Rhode Island.

In April, 1997, ANT sold this condominium, with the bulk of the proceeds going to the Owner in the form of a "loan" and to buy three automobiles owned and/or used by the Owner and his daughters.

The Government takes the position that, among other things, these machinations—the establishment of the trust, and various sales and loans—were aimed at concealing assets from the bankruptcy proceeding illegally. The subpoena seeks, among other things, documents relating to billing and to payment of legal fees between the Attorney and the Owner, and documents relating to transactions involving the creation of the American Nominee Trust, the sale of the Newport Property, and the creation, payment, assignment, and release of the $600,000 mortgage upon the Newport Property.

The history of this case reflects the uncertainty and disagreement over what rules

should govern the issuance of subpoenas to attorneys. The Government has consistently taken the position—now prevailing—that no adversary hearing is required prior to the issuance of the subpoena, and any contrary rule adopted by the Local Rules is invalid. Thus, the request to issue the subpoena arrived first from the Assistant United States Attorney, *ex parte*. Over the Government's objection, in accordance with the then-prevailing rule, this court gave the Attorney an opportunity for an adversarial hearing before issuing the subpoena. The intervening *Stern* decision now eliminates both the requirement for the prior adversarial hearing and the criteria to be met at that hearing. The court will therefore weigh the appropriateness of the issuance of the subpoena under the rubric of Rule 17(c) of the Federal Rules of Criminal Procedure.

## III. *DISCUSSION*

■ The grand jury has the "right to every man's evidence." *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). This right is limited, however, by both express "constitutional, common-law or statutory privileges" and by "judges' supervisory powers, which, under Fed.R.Crim.P. 17(c), include the power promptly to 'quash or modify the subpoena if compliance would be unreasonable or oppressive' " *In re Grand Jury Matters,* 751 F.2d 13, 16–17 (1st Cir. 1984). *See Branzburg,* 408 U.S. at 688, 92 S.Ct. 2646; *Whitehouse v. U.S. Dist. Court for Dist. Rhode Island,* 53 F.3d 1349, 1357 (1st Cir.1995).

■ Counsel for the target Attorney argues that, in the particular circumstances of this case, the subpoena is unreasonable and oppressive because it will compromise the Attorney's client's Sixth Amendment right to assistance of counsel. The First Circuit has recognized that attorney subpoenas improperly "divert the attorney's time and resources away from his client" and even "force attorneys to withdraw." *Whitehouse,* 53 F.3d at 1354.

In a case with important similarities to the present case, then Chief Judge Campbell, applying Rule 17(c)'s "unreasonable and oppressive" standard, upheld a district court

judge's order "granting motions to quash five federal grand jury subpoenas issued to attorneys who were serving as defense counsel, in state criminal proceedings, for the same persons the federal grand jury was investigating." *In re Grand Jury Matters,* 751 F.2d at 14. The First Circuit's finding that the subpoenas were unreasonable and oppressive was grounded on "the importance that the federal Constitution places upon the right to counsel in criminal prosecutions and the fact that a judge could plausibly determine in these circumstances that the timing of the subpoenas unduly and unnecessarily burdened that right." *Id.* at 18. *See also In re Grand Jury Subpoena (Legal Services Center),* 615 F.Supp. 958, 969 (D.Mass.1985) (quashing subpoenas to attorneys representing clients before Immigration and Naturalization Service).

*In re Grand Jury Matters* arose from a joint federal-state investigation of five defendants, all indicted on state drug charges. While the state charges were pending, a federal grand jury was conducting its own investigation, and it issued subpoenas to the defendants' attorneys. The subpoenas required the attorneys to bring documents evidencing legal fees and expenses received from or on behalf of the defendants.

The district court, as noted, quashed the subpoenas. *See In re Grand Jury Matters,* 593 F.Supp. 103, 105 (D.N.H.1984). In affirming the ruling, the First Circuit highlighted "the effect the timing of the subpoenas would have" on the attorneys' ability to prepare their clients' pending cases. *In re Grand Jury Matters,* 751 F.2d at 17.

Moreover, Judge Campbell noted the serious problems that can arise when attorneys find themselves targeted by prosecutors in the midst of a criminal case.

Although service of a grand jury subpoena on an attorney representing the target of the investigation in pending, related criminal proceedings is not unprecedented, *see, e.g., United States v. Dyer,* 722 F.2d 174 (5th Cir.1983); *In re Terkeltoub,* 256 F.Supp. 683 (S.D.N.Y.1966), it is *highly unusual* insofar as we can tell from the case law and implicates serious policy con-

cerns. The district court could weigh those policies and conclude that the potential disruption of the attorneys' relationships with their clients at this crucial period in their preparation of their clients' defense made the subpoenas unreasonable and oppressive at the time they were served. *Id.* at 18. (emphasis added).

In the present case, as in *In re Grand Jury Matters*, the concerns about chilling a vigorous defense are particularly pressing. The Government's subpoena calls the Attorney, who is intimately involved in the Owner's defense in a pending criminal case, before a grand jury looking into many of the same activities for which the Owner is shortly to stand trial.

Although the Attorney is not counsel of record in the Owner's criminal trial, he is clearly essential to its preparation. He has been the Owner's civil attorney since 1992. His knowledge of the Owner's business and personal financial transactions in the context of this unusually complex, document-intensive case, is extensive. Already the Owner's activities have generated an FTC civil enforcement proceeding, a bankruptcy proceeding and a criminal prosecution. The crucial role of the Attorney in assisting defense counsel is further underlined by the fact that the Owner is incarcerated pending trial and cannot himself assist. *Cf. In re Grand Jury Proceedings,* 786 F.2d 3, 6 (1st Cir.1986) (refusing to quash subpoena on paralegal working on criminal defense of target because, in part, target's right to counsel was not significantly affected since paralegal was "not responsible for significant trial and investigative strategies or decisions").

Finally, it does not appear that the Attorney's contributions to the Grand Jury's investigation could be more than minimal. He was not involved in setting up the ANT in 1993 or in filing the Owner's personal bankruptcy action. Moreover, beyond receiving a check for a portion of the proceeds of the sale of the Newport Property, used to retain him as counsel, it does not appear that the Attorney had any significant involvement in the alleged improper transactions related to the Newport Property. Given the real and immediate risk of chilling the Owner's Sixth Amendment rights, the court will deny the Government's motion.

## IV. CONCLUSION

For the foregoing reasons, applying the Rule 17(c) standard, the Government's Motion for Leave is DENIED. The subpoena should be deemed quashed.

It is So Ordered.